"Respectfully,<br>"F. A. BOOTH."

This testimony was admissible. It clearly indicates that appellant was trying to prevent George Clark (brother of the prosecuting witness) from testifying against him in this case.

There is no error in this record, and the judgment is affirmed.

*Affirmed.*

## C. C. COLLINS v. THE STATE.

### No. 4228.    Decided February 5, 1908.

**1.—Assault With Intent to Commit Rape—Continuance.**

Where upon trial for assault with intent to commit rape, the State's testimony showed that the alleged transaction had taken place in the sleeping car of a railway train, filled with passengers, defendant's first application for continuance setting out testimony of absent witnesses, and defendant's motion for new trial setting out newly discovered evidence, to show want of outcry on part of prosecutrix, etc., should have been granted.

**2.—Same—Intent—Force Used.**

Where upon trial for assault with intent to rape the evidence failed to show an assault with a specific intent to commit the crime of rape, or such as might reasonably be supposed sufficient to overcome offered resistance, taking into consideration the relative strength of the parties and the circumstances and environments of the case, a conviction could not be sustained.

Appeal from the District Court of Harrison. Tried below before the Hon. W. C. Buford.

Appeal from a conviction for assault with intent to commit rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*S. P. Jones,* for appellant.—On question of insufficiency of the evidence: Scott v. State, 51 Texas Crim. Rep., 5; 100 S. W. Rep., 159; Dina v. State, 46 Texas Crim. Rep., 402; 78 S. W. Rep., 229; Mitchell v. State, 32 Texas Crim. Rep., 479; 24 S. W. Rep., 280; Boazeman v. State, 34 Texas Crim. Rep., 503; 31 S. W. Rep., 389; Saddler v. State, 12 Texas Crim. App., 194; Irving v. State, 9 Texas Crim. App., 66; Carson v. State, 24 S. W. Rep., 409; Ellenburg v. State, 36 Texas Crim. Rep., 139; 35 S. W. Rep., 989; Passmore v. State, 29 Texas Crim. App., 241; 15 S. W. Rep., 286.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault with intent to rape upon the person of Mrs. McDowell.

Taking the State's case as strong as the record can make it, *it is shown* that the prosecutrix boarded a Pullman car on the Texas and Pacific Railway at El Paso, en route to visit her family in Georgia. This occurred on June 17th; that on the morning of the 19th about 1 or 1:30 o'clock the train would reach Marshall, Texas, where prosecutrix would be transferred to a New Orleans car. Accompanying her were her two children, a boy and a girl, about six years of age; that appellant was regular porter on that car, and Carter was a buffet porter; that under the rules of the Pullman Car Company, on the night of June 15th, after supper was served by the buffet porter, he was placed on watch for the remainder of the night; that prosecutrix had appellant to make down her berth on the night of the 18th of June, after leaving Dallas, informing him that she would not undress herself or children, as they would have to change cars in the middle of the night. Reaching a point near Marshall she was awakened by the porter Carter, and after some conversation with him she went to the ladies' dressing room on the car; it being in front end—her berth being the last in the rear end of the car, and the car was the last on the train. That Carter went to the dressing room and inquired if she desired some towels, being answered in the affirmative, he went away and soon returned with the towels, and by some improper familiarity annoyed her. She left the dressing room, and returned to her berth and sat down. That appellant and Carter (the two porters), held a conversation at the rear end of the aisle, and very near her berth, in which appellant asked Carter if Mrs. McDowell was very mad. Appellant then went to the berth of prosecutrix, where she and her two children were awake. Prosecutrix was sitting in her berth with the curtains drawn in front of her. Appellant began a conversation with her, and while engaged in this conversation inquired if he had not handled her before, stating places where he had traveled as Pullman car porter. Further asking her if she had not traveled on these runs. To which she nodded assent. During this conversation, which seemed to have been friendly, he caught her watch, which was pinned to her breast, in his hand, and asked some question in regard to it. She shoved his hand away and told him that it was her watch. He made two other attempts to take hold of the watch, but did not catch it. She shoved his hand away, and told him to leave her alone. He further stated to her that he would like to handle her back to El Paso when she returned. She made some reply. He then told her his name was Collins, and that she could write to him so that he would catch her on her return to El Paso. When she shoved his hand away the last time she called for the conductor, and appellant caught her by the hand or wrist and said "hush," and requested her to go to the dressing room. He then went away and returned, and said something that prosecutrix did not

remember, because she had become very much frightened. That appellant then went to the extreme rear end of the aisle and was in close conversation with the other porter, being only a few feet from her berth and toward the rear end of the train. She got up and left the berth in search of the train conductor, and finally returned with him. It is further shown that every lower berth in the car was occupied as well as one of the upper berths. There were eighteen passengers in this Pullman car.

Appellant took the stand in his own behalf and denied the matters of familiarity, etc., to which the prosecutrix testified.

Appellant sought a continuance for some absent witnesses, as well as making motion for a new trial on newly discovered evidence, the effect of which was to show that these absent witnesses were occupying berths in the same car in which this matter should have occurred, and that there was no outcry on the part of prosecutrix, and no commotion created by reason of the alleged conduct. This was the first application, and in our opinion should have been granted.

It is contended the evidence is not sufficient to support a conviction for assault with intent to commit rape by force. We are of opinion that this contention is sound. The conduct on the part of the two porters, of which appellant was one, as detailed by prosecutrix, was insulting, discourteous, and an outrage upon her feeling; but conduct of the character described is not sufficient to constitute an assault with intent to commit rape by force, and especially under the environments, surroundings, and the number of people, among whom were grown men, who were so near at hand. The slightest outcry, or at least an ordinary outcry, would have aroused the sleeping inmates of the car, and the evidence could hardly be tortured into saying a negro porter would undertake to ravish a white woman in a crowded car where eighteen white occupants were sleeping. However outrageous such conduct may have been, if in fact it was committed by appellant, we do not think this testimony is sufficient to indicate an intention on his part to have carnal intercourse with the prosecutrix by force; and in fact, if his request meant anything, it was that she would accompany or follow him to the dressing room. The only act of force testified to by her was that he caught her watch, which was pinned to her breast, and when she called the conductor, he caught her by the hand or wrist and requested her to hush, and went away. Under our statutes and the decisions thereunder this case could not be held to arise to the dignity of an assault with intent to commit the offense of rape by force. Among other cases, see Sirmons v. State, 44 Texas Crim. Rep., 488; Graybill v. State, 41 Texas Crim. Rep., 286; Hancock v. State, 47 S. W. Rep., 465; Scott v. State, 51 Texas Crim. Rep., 5; 100 S. W. Rep., 159; Dina v. State, 46 Texas Crim. Rep., 402; 78 S. W. Rep., 229; and Cotton v. State, 52 Texas Crim. Rep., 103 S. W. Rep., 185. There must be the specific intent to commit the crime of rape by force established by the evidence to constitute the crime coupled with the assault. Dockery v. State, 35 Texas Crim. Rep., 487;

Price v. State, 36 Texas Crim. Rep., 143; O'Brien v. State, 40 S. W. Rep., 969; Wood v. State, 61 S. W. Rep., 308; Caddle v. State, 44 Texas Crim. Rep., 213; 70 S. W. Rep., 91; Coffee v. State, 76 S. W. Rep, 761; House v. State, 9 Texas Crim. App., 967; Saddler v. State, 12 Texas Crim. App., 194; Peterson v. State, 14 Texas Crim. App., 162, 535; Jones v. State, 18 Texas Crim. App., 485; Moore v. State, 20 Texas Crim. App., 275; Pless v. State, 23 Texas Crim. App., 75; Carroll v. State, 24 Texas Crim. App., 306; Robertson v. State, 30 Texas Crim. App., 498; Shields v. State, 32 Texas Crim. Rep., 498; Steinke v. State, 33 Texas Crim. Rep., 65; Porter v. State, 33 Texas Crim. Rep., 385; Marshall v. State, 34 Texas Crim. Rep., 22; Matthews v. State, 34 Texas Crim. Rep., 479; and Ellenberg v. State, 36 Texas Crim. Rep., 139.

The statute provides that "rape is constituted by the carnal knowledge of a woman without her consent, obtained by force, threats or fraud." (Article 633, Penal Code.) "The definition of 'force' as applicable to assault and battery, applies also to the crime of rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." Article 634, Penal Code.

Under the State's evidence, appellant catching hold of prosecutrix would constitute an assault and an outrage, but it was not of that character of assault, or intent by force which would elevate it sufficiently high to constitute that assault one with the specific intent to commit the crime of rape, or such as might reasonably be supposed sufficient to overcome offered resistance, taking into consideration the relative strength of the parties and the circumstances and environments of the case. Here we have a grown woman in a car occupied by eighteen white people, occupying berths in the car, and the only force used was the catching or taking hold of the watch or by placing his (appellant's) hand upon her wrist with the request that she "hush" and follow him to the ladies' dressing room. As we view the facts under our law, this is not sufficient to authorize a conviction for assault with intent to rape.

The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*