## C. J. COCKRELL v. THE STATE.

No. 21875. Delivered October 21, 1942.

The opinion states the case.

*Pichinson & Alsup,* of Corpus Christi, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was given a sentence of ten years in the penitentiary on a charge of assault to rape.

The appeal is predicated on several grounds which have been extensively briefed, but the only question which has appeared to give him relief is the bill of exception dealing with the sufficiency of the evidence.

The accused was a salesman in a furniture establishment. In the late afternoon of April 30, 1941, he met a little girl with her brother and another small boy, apparently loitering at a drink place on their way home from school. At his suggestion, they joined him and engaged in smoking cigarettes with him and to some extent enjoying his concoction of liquor and Coca-Cola. Following this the boys accepted his hospitality and entered a picture show, while he kept the little girl, only seven years of age, in his car and entertained her in some manner not fully disclosed by the evidence during the entire night and until about nine o'clock the next morning, at which time he took her to his home, got his wife in the car with him, and proceeded to take the child to school. It is not given to a jury or to that class of people qualified to serve as such, to understand the purpose or the impulses of the man who would do the things proven in this case. Consequently, it is not a surprising verdict when a jury, under such circumstances, metes out the punishment in a case like this, even though the facts may not be altogether applied to the law of the case as controlled by the charge in the indictment. It is the purpose of the trial court to direct them in doing so, and in the event the State fails to make out its case as charged, to take the matter away from the jury or to grant a new trial in the event he had mistakenly submitted it to them.

There is no direct evidence in this case of an attempt to commit the offense of rape, but the State relies on circumstantial evidence for a conviction. Admittedly, a conviction will lie where the circumstances are sufficient, and the question for consideration before us is whether or not the circumstances of this particular case are sufficient. The little girl was not called as a witness and no reason given for not producing her story of what occurred that night. There might have been facts which the child knew but we cannot go further than the evidence. For a discussion of this subject, see Johnny Vasquez v. State, No. 22,198, this day decided. Her brother testified that

he was nine years of age and that his sister was seven years of age; that they met the appellant while in company with another friend· at a place known as "Al Shoops." Appellant called him to the car and asked him to get his sister and the other witness and he would buy them some hamburgers, which he did, together with some soda water and ice cream. He then gave the little girl and the witnesses cigarettes. He gave the two boys a dollar to go to the theater. When they came out they were unable to find the little sister or the appellant at which time they called a policeman.

A detective testified as to his efforts to find appellant and the little girl, but there is nothing particularly significant about his experiences. The next morning, between nine and ten o'clock, he saw appellant with the little girl and his wife in a car in the driveway at his home. They came out and he followed them to a point near the school at which he stopped them, arrested the appellant and took charge of the little girl.

The mother then testified to the events of the night and the next morning at which time they took the little girl to Dr. Baldwin, who examined her and gave the following testimony which, as we view the evidence, is the only circumstance in the case indicating an attempt to rape:

"I made an examination of the child's female organs. She was placed on the examining table with the nurse and her mother present, and the female organs were examined, and she had a bluish discoloration about the mouth of the vagina, a small abrasion, no tear, on the right side of the vaginal orifice, to the right of the hymen. Those bruises were just inside the lips, between the lips of the vagina—or the opening to the vagina, but not through the hymen. The hymen was not penetrated. The abrasion was located between the labia minor and the hymen. The hymen showed a small opening, no penetration beyond the hymen. The injuries were of approximately a few hours duration; they were fresh; I could tell they were of recent occurrence. Explaining that in more simple language, I will state that libia means lips of a female organ as best I can explain. The vagina has two sets of lips, a large lip and a small lip, and between those lips there is a hymen; the hymen covers the opening into the vagina in a child that small. There is a sheet of skin covering the opening into the vagina. Between the hymen and those lips, there was a bruise and one little tear. In order to get a tear like that, the lips would have to be

opened in some way, pulled apart, in order to get a tear or bruises of that nature. Ordinarily those lips stay together; when a woman has her legs together, they stay together—a female rather. The diagnosis made then, in simple terms, was a small laceration and bruises just outside the vagina, between the lips, between the labia. For an injury like that to happen, in my opinion, it could only be caused by an opening of the lips, some one opening the child's lips, lips of the vagina, and it would. be kind of hard to have an accidental occurrence. It could have happened that the male organ of a man had been pushed up against the female organ of a child."

On cross-examination he testified further:

"When I say it could have happened that way, I am not trying to tell this jury it did happen that way; I did not say it did. As a matter of fact, the injury I found there could have been caused in several different ways. I would say it is possible that the hand, or finger, could have caused the bruises, but I would not say that it is probable. I am not telling this jury that a male organ was inserted in that little girl; I would not tell them that."

Again, on cross-examination, he said:

"After the examination I made of that child, I will say that a normal male could not have entered the vagina without complete rupture. I never heard of that happening without completely rupturing. That would have ruptured the child."

The doctor's further examination on the subject adds nothing to the foregoing testimony.

Other witnesses testified to seeing appellant with the little girl at rather late hours that night at sandwich shops and in the car. He was petting her and playing with her.

A detective made a very careful examination of the child and her clothing and also the clothing of the appellant but failed to find any male sperm present on the child or on the clothing of the appellant. So far as the record indicates, the State properly developed its case and used every available fact and circumstance except the evidence of the injured party.

Appellant did not testify in the case himself, which is easily accounted for by the circumstances. He could offer noth-

ing to commend himself to the jury or to any respectable person. However, he proved a good reputation except for his drinking spells upon which defense he probably relied as an excuse for his abnormal conduct in this case.

There is also evidence in the case to indicate that another person other than appellant had attempted to have sexual intercourse with the little girl a few days prior thereto. This is presented on the motion for new trial but we see no important purpose that it could have in the case, though probably admissible on the trial. We are relegated to the question, as above indicated, as to whether or not the evidence is sufficient to support the conviction for the specific charge of assault to rape.

We have read discussions of the subject in many decisions of this court but there are none that we consider can be referred to as an identical case. In the opinion by Judge Graves in Lacey v. State, 127 S. W. (2d) 890, we do find a discussion which we consider to be sound, under facts almost opposite in detail to those before us, but we believe them to be stronger than those of the instant case. The prosecutrix in that case testified that she was a small child and told the story of the appellant giving her money and taking her in his car out into the country where they went to a creek bed near the highway, that the accused took out his male organ, got on top of the child and "wiggled," at which time a white man discovered them and frustrated his plans. The girl was examined by a doctor who found no evidence of injury to the child's female parts. The opinion holds that the evidence was not sufficient to show, beyond a reasonable doubt, that appellant made an assault upon this child with the intent to have carnal intercourse with her. Even if it showed intent, it did not go far enough to show, beyond a reasonable doubt, that there was any effort made to perform the act. The evidence in the Lacey case indicated the conduct of a sex pervert who attempted to perform his erotic manipulation, but it was held that there was no evidence that he attempted to place his male organ in the female organ of the prosecutrix, which specific attempt is necessary to constitute the offense charged, as is true in the present case.

So far as it is humanly possible to reason in a case so inflammatory as the one before us, it appears that if the appellant had in mind the purpose of ravishing this child, he could have done so in a much shorter period of time than that in

554

which he engaged himself. The period of time indicates something beyond our understanding and entirely different to that which was charged. Having kept the child for so great a time, it appears that if he had been making such attempts there would have been physical facts discoverable by the doctor and by the detective who made the examinations, which would speak more clearly than the record reflects. The fact that his conduct is unexplained by him and that it is unexplainable in the record is not sufficient to fasten upon him the specific crime charged and support the conviction which resulted. Many other things under the circumstances of the case and under the evidence which the doctor gave could as well have happened. The jury had no right to reach a conclusion from the doctor's testimony which he, as an expert, said could not be reached. This takes it out of the circumstantial evidence rule to support the conviction.

We think that the court did not abuse his discretion in permitting Daniel Crumley, the little boy, to testify. Again, we refer to Lacey v. State, supra, for a discussion of this question, and also to Flannery v. State, 117 S. W. (2d) 1111, and Branch's Ann. Tex. P. C., p. 993, where may be found a full discussion of the subject and which we approve.

A reversal of the case on the grounds above stated eliminates the necessity of discussing the court's action on the motion for new trial.

All the other bills of exception are overruled.

The judgment of the trial court is reversed and the cause remanded.